**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CV-24328-HUCK/Becerra**

**COMMODORE PLAZA**
**CONDOMINIUM ASSOCIATION, INC.,**

      *Plaintiff,*

v.

**EVANSTON INSURANCE COMPANY**,

      *Defendant.*

_____/

**<u>ORDER</u>**

      This diversity case presents an interesting conflict-of-laws question: whether, under the *lex loci contractus* rule, Georgia substantive law governs this real-property insurance dispute, or whether, because that rule does not apply, Florida substantive law governs. Contending that Florida law applies, Commodore Plaza asks the Court to compel the parties to resolve their insured property damage dispute through the appraisal process, as provided in their insurance policy. *See* Plaintiff's Motion to Compel Appraisal and Appoint a Neutral Umpire [ECF No. 44] ("Appraisal Motion"). Contending that Georgia law applies, Evanston asserts appraisal is not appropriate because the parties' dispute focuses solely on the scope of necessary repairs to the insured property, which does not warrant appraisal under Georgia law. *See* Defendant's Response to Plaintiff's Motion to Compel Appraisal and Cross-Motion to Determine Applicable Law [ECF No. 47] ("Conflict-of-Laws Motion"). After this issue was fully briefed, the Court held a hearing on July 26, 2022. At the conclusion of the hearing, the Court announced its conclusion that Florida substantive law applies, and granted Commodore Plaza's Appraisal Motion, denied Evanston's

Conflict-of-Laws Motion, and ordered the parties to complete the appraisal process according to their insurance policy. The Court's reasoning for its conclusion is set forth below.

## **FACTUAL BACKGROUND**

The pertinent facts are not in dispute. Commodore Plaza is a Florida corporation that owns a community of condominiums and townhouses in Aventura, Florida (the "Property"). Evanston is an insurance company incorporated in Illinois with a principal place of business in Illinois, and is authorized to issue insurance in Florida. In June 2017, after obtaining a primary layer of insurance coverage from another insurer, Commodore Plaza obtained an excess insurance policy from Evanston to cover the Property against damages, including hurricane damage. To obtain this policy from Evanston, Commodore Plaza engaged Katie McGregor of AmWINS Brokerage, an insurance agent, to negotiate with Evanston's underwriter, Josh Cole. Cole's office is located in Alpharetta, Georgia, while McGregor's office is located in Atlanta, Georgia. Ultimately, Cole and McGregor agreed that Evanston would issue to Commodore Plaza a $5 million excess insurance policy insuring the Property. The policy included a provision permitting either party to demand appraisal in the event the parties disagreed on "the amount of loss" to the Property. Cole delivered the coverage binder for the insurance policy to McGregor in Alpharetta on June 19, 2017.

In September 2017, Hurricane Irma struck South Florida, causing physical damage to the Property. Commodore Plaza gave timely notice to its insurers of the damage to the Property. After an investigation, the underlying primary insurer paid Commodore Plaza $5 million, which exhausted the primary coverage. Evanston, on the other hand, did not pay under its policy because Evanston disagreed with Commodore Plaza's assessment of the damage. Specifically, while Commodore Plaza contended that extensive roof, window, and interior repairs were needed, Evanston contended that most of the damage claimed by Commodore Plaza was attributable to age

2

and normal wear-and-tear. Evanston, therefore, countered by recommending limited roof and window repair.

In an attempt to resolve this disagreement, Commodore Plaza sent Evanston a written demand for appraisal of the damage, in accordance with the terms of the policy. Evanston declined to participate in appraisal. As a result, Commodore Plaza brought this action to have the Court compel Evanston to participate in appraisal and to stay the case pending completion of appraisal. Evanston counters that Commodore Plaza is not entitled to appraisal because Georgia law does not permit appraisal when only the scope of loss is at issue.

## ISSUES PRESENTED

The first issue in this case is whether the rule of *lex loci contractus* applies, as Evanston contends, or, as Commodore Plaza contends, binding Eleventh Circuit precedent requires departure from *lex loci contractus* in insurance disputes related to real property located in Florida.

The second issue is, assuming *lex loci contractus* does apply, whether the public policy exception recognized by the Florida Supreme Court nevertheless demands departure from the *lex loci contractus* rule.

## ANALYSIS

A.  <u>Choice of Law.</u>

The Court exercises its diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a). A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which the court is located. *Erie R.R. v. Thompkins*, 304 U.S. 64, 78 (1938). Thus, when faced with a conflict-of-laws situation, a federal court must apply the law of the forum state in deciding which law to apply to the parties' substantive claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must

conform to those prevailing in Delaware's state courts."). In this case, "[b]ecause the Court is exercising diversity jurisdiction over the suit – and since the Court is in Florida – the Court applies Florida's choice-of-law rules." *Arndt v. Twenty-One Eighty-five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020).

1. Applicable Standard.

As Evanston conceded at the hearing, there is no case from the Florida Supreme Court directly applicable to this real-property insurance claim dispute. In the absence of controlling Florida law, the Eleventh Circuit, in a diversity case, "may exercise an option to make an educated guess as to how Florida courts would resolve the issue." *Smigiel v. Aetna Cas. & Sur. Co.*, 785 F.2d 922, 925 (11th Cir. 1986). Once the Eleventh Circuit has made its educated guess, it must be followed absent a subsequent state court decision rendering the guess "clearly wrong." *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979)[1] ("Once a panel of this Court has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision which . . . makes this Court's decision clearly wrong."). "Clearly" is defined as "without doubt; obviously." *Clearly*, The Britannica Dictionary, https://tinyurl.com/yckjmxpz. The "clearly wrong" standard identified in *Lee* is thus a high burden to meet – there must be no doubt that the subsequent state court decision renders the prior Eleventh Circuit decision wrong.

2. Historical Background.

Florida's general choice-of-law rule for contract cases is *lex loci contractus*: a contract, such as an insurance policy, is interpreted according to the law of the state where the contract was

---

[1] Fifth Circuit decisions that were handed down before the close of business on September 30, 1981, are binding on the Eleventh Circuit and the district courts therein. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

4

made. *E.g.*, *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974). "[A] contract is deemed to be made in the state where the last act necessary to make a binding agreement takes place." *Ray-Hof Agencies, Inc. v. Petersen*, 123 So. 2d 251, 253 (Fla. 1960). Typically, an offeree's communication of acceptance to the offeror is the last act necessary to make a contract. *See Nowlin v. Nationstar Mortg., LLC*, 193 So. 3d 1043, 1045 (Fla. 2d DCA 2016).

As such, a contract is made in the state where the contract was accepted. In the instant case, the parties agree that the insurance policy was accepted in Georgia. Indeed, both Evanston's and Commodore Plaza's insurance agents' offices were located in Georgia, and the policy binder was delivered to Commodore Plaza's agent in Georgia. Thus, if the Court were to apply the traditional *lex loci contractus* rule, Georgia law would govern the interpretation of the insurance policy. However, in this real-property insurance damage case, *lex loci contractus* does not apply because the real property is located in Florida.

      i.  <u>Eleventh Circuit Precedent.</u>

The Eleventh Circuit has on several occasions concluded that Florida courts would not apply *lex loci contractus* to insurance policies which insure real property located in Florida. *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990); *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511 (11th Cir. 1997); *Great Am. E & S Ins. Co. v. Sadiki*, 170 F. App'x 632 (11th Cir. 2006).[2] The first case is *Shapiro*. There, the plaintiff sued an insured real property owner in Florida state court for injuries the plaintiff sustained while on the insured's Florida real property. 899 F.2d at 1117. The plaintiff and the insured reached an agreement whereby a $950,000 judgment would be entered against the insured. *Id.* Pursuant to the agreement, the insured paid the

---

[2] The Court acknowledges that *Sadiki* is an unpublished opinion. However, because *Sadiki* relies on *Shapiro* and *LaFarge*, and its analysis is persuasive, the Court finds *Sadiki* informative to the discussion here.

plaintiff $200,000 and assigned its rights, if any, against Associated, the company insuring the real property. *Id.*

The plaintiff then sued Associated in Florida federal court to recover the $750,000 balance of the judgment. *Id.* After a bench trial, the district court ruled in Associated's favor, concluding that under either Florida or California law, the plaintiff's claim against the insured was not covered under the Associated policy. *Id.* at 1118. On appeal, the Eleventh Circuit first had to determine "whether to construe the [real-property insurance] policy according to the substantive law of Florida or California." *Id.* Under "the archaic *lex loci contractus* rule," California law would apply because the policy was issued and countersigned in California through a California broker. *Id.* at 1119.

The *Shapiro* court "[did] not believe, however, that the Florida Supreme Court would apply the antiquated *lex loci contractus* rule to the instant case." *Id.* It reasoned that while *lex loci contractus* was appropriate in the context of automobile insurance – where the insured property could easily move from state to state, thus causing uncertainty as to which state's law governed the policy, *see Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988) – "it is equally true that real property remains stationary and immobile," thus eliminating any such uncertainty. 899 F.2d at 1119. In its reasoning, *Shapiro* noted that while *Sturiano* – a case <u>explicitly</u> limited to automobile insurance contracts – expressed concerns about the validity, bindingness, and stability of automobile insurance contracts if *lex loci contractus* was not applied, those concerns are not present in a real-property insurance claim. *Id.* ("Because in the case at bar the location of the insured risk was stable, any doubt concerning a party's ability to restrict the power to enter into valid, binding, and stable contracts is dispelled.") (quotations omitted). *Shapiro*, therefore, held

6

that Florida law should apply, as the location of insured real property is permanent, unlike an automobile. *Id.*

In further support of its conclusion that Florida law should apply, *Shapiro* found that Florida courts have traditionally applied the law of the situs in disputes centered on real property. *Id.* at 1121 (citing *Xanadu of Cocoa Beach, Inc. v. Zetley*, 822 F.2d 982, 985 (11th Cir. 1987); *In re Estate of Swanson*, 397 So. 2d 465, 466 (Fla. 2d DCA 1981); *Kyle v. Kyle*, 128 So. 2d 427, 429 (Fla. 2d DCA 1961)). Further bolstering its conclusion that Florida law applied, *Shapiro* noted Florida's strong interest in regulating the insurance industry as reflected in its extensive statutory scheme regulating insurers in Florida. 899 F.2d at 1121. Finally, the court noted the significant interest that Florida has in the outcome of a case involving Florida real property. *Id.* As a result, in the absence of controlling Florida law, *Shapiro* "hypothesize[d] that the Florida Supreme Court would apply Florida law to this case." *Id.*

The Eleventh Circuit affirmed its position in *Shapiro* seven years later in *LaFarge*. In *LaFarge*, the court re-emphasized that while "our migratory, transitory society" presents stability concerns in the contexts of automobile insurance and life insurance, "the migration rationale [is] inapposite with immovable property," such as real property. 118 F.3d at 1515–16. *LaFarge*, therefore, re-affirmed *Shapiro*, holding that Florida law properly applied to "this dispute over a contract insuring real property in [Florida]." *Id.* at 1516.

And again, in *Sadiki*, the Eleventh Circuit re-affirmed its conclusion that *lex loci contractus* was inapplicable in an insurance contract dispute involving Florida real property. 170 F. App'x at 634. *Sadiki* acknowledged that *Shapiro* and *LaFarge* were decided without controlling Florida law. *See id.* Nevertheless, "[a]fter a careful consideration of the Florida case law cited by the parties and revealed by our own research, we cannot conclude that the Florida courts have given a

clear indication that this court's decisions in *LaFarge* and *Shapiro* were wrong." *Id.* Without a "clear indication" that its prior precedent was "clearly wrong," *Sadiki* was bound to follow *Shapiro* and *LaFarge*. *Id.* (citing *Lee*, 592 F.2d at 272). Consequently, the Eleventh Circuit followed its prior precedent and applied Florida law to an insurance policy dispute involving Florida real property. *See* 170 F. App'x at 634.

ii. The *Roach* Decision.

Evanston acknowledges the above Eleventh Circuit decisions and concedes that there has been no subsequent Florida case that applies *lex loci contractus* to a real-property insurance dispute where the property is located in Florida. Nevertheless, Evanston contends that the Florida Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006), renders *Shapiro* clearly wrong. To better understand *Roach*, it is helpful to consider the Florida Supreme Court's decision in *Sturiano*, which served as the basis for the *Roach* decision.

In *Sturiano*, the plaintiff sustained injuries in an automobile accident in Florida which killed her husband, the driver. 523 So. 2d at 1127. The plaintiff sued her husband's estate for negligence, seeking to recover under her husband's automobile insurance policy, which had been executed in New York. *Id.* The jury found for the plaintiff, but the intermediate appellate court reversed, concluding that *lex loci contractus* required application of New York law, which did not recognize the plaintiff's claim. *Id.* On review, the Florida Supreme Court affirmed the appellate court. *Id.* at 1130. The Florida Supreme Court held that *lex loci contractus* governed in determining the applicable law on the issue of insurance coverage. *Id.* at 1128. In doing so, the court held that the significant relationships test advanced by the Restatement (Second) of Conflicts of Laws was not as appropriate as *lex loci contractus* in automobile insurance disputes. *Id.* at 1129.

8

In support of this holding, *Sturiano* reasoned that because "we live in a migratory, transitory society," *lex loci contractus* was necessary to ensure that parties could predict what law would govern their insurance contracts when negotiating them. *Id.* ("While it is true that *lex loci contractus* is an inflexible rule, we believe that this inflexibility is necessary to ensure stability in contract arrangements."). *Sturiano* expressed concern that, under the significant relationships test, the governing law could change simply by the automobile owner moving the automobile across state lines. *See id.* Considering how transitory insureds and their automobiles inherently are, *Sturiano* posited that to allow one party to change the applicable law by moving to another state "would substantially restrict the power to enter into valid, binding, and stable contracts." *Id.* at 1130. Applying *lex loci contractus* "to situations involving automobile insurance policies," however, afforded more certainty because the governing law would uniformly be that of the state in which the contract was executed. *See id.* Importantly, however, *Sturiano* twice expressly limited its holding "to contracts *for automobile insurance*." *Id.* at 1129, 1130 (emphasis added).

In *Roach*, the Florida Supreme Court revisited the applicability of *lex loci contractus* in another automobile insurance claim. There, the automobile insurance policy was executed in Indiana – the state where the Roaches permanently resided. The Roaches sued their insurer, State Farm, seeking to recover uninsured motorist benefits after being in an accident in Florida. In doing so, the Roaches argued that *lex loci contractus* did not apply because of Florida's public policy exception.[3] The trial court granted summary judgment in State Farm's favor, finding that under *lex loci contractus*, Indiana law applied, and that Indiana law did not entitle the Roaches to uninsured benefits.

---

[3] A more detailed analysis of the public policy exception as applied to the present case is below. *See infra* Part A.4.

The intermediate appellate court reversed the trial court's judgment, concluding that the public policy exception to *lex loci contractus* demanded application of Florida law. 945 So. 2d at 1163. In its review of the case, the Florida Supreme Court briefly reiterated its approval of the *lex loci contractus* rule and the rationale supporting that rule, referring to its precedent of applying *lex loci contractus* in automobile insurance claims cases. *Id.* at 1164 (citing *Sturiano*, 523 So. 2d at 1129–30; *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988)). However, *Roach* mainly focused on whether the plaintiffs, who were not permanent Florida residents, could invoke the public policy exception to *lex loci contractus*. *Id.* at 1162. The court answered "no," holding that the public policy exception may be invoked to protect only permanent Florida residents. *Id.*

At this juncture, the Court finds it informative to identify what the *Roach* court did not do. First, the *Roach* decision did not address the applicability of *lex loci contractus* in the real property context. Rather, *Roach* involved an automobile insurance dispute, which – as the courts in *Roach*, *Sturiano*, and *Shapiro* acknowledged – comes with stability concerns due to the transitory nature of automobiles; that is, the applicable law could change on the whim of the insureds' decision to change their residence. *See id.* at 1164; *Sturiano*, 523 So. 2d at 1130; *Shapiro*, 899 F.2d at 1119. Second, although the *Roach* court described its "long adhere[nce] to the rule of *lex loci contractus*," *Roach* did not portray that rule as ironclad. Rather, *Roach* recognized that exceptions to *lex loci contractus* exist, including the public policy exception discussed further below. 945 So. 2d at 1169. Third, and perhaps most significantly, the *Roach* court did not address any of the Eleventh Circuit's decisions which hypothesized that Florida law would not apply *lex loci contractus* when the insurance dispute involved Florida real property. *See generally id.* In other

words, although *Shapiro*, *LaFarge*, and *Sadiki* were on the books before *Roach*, the Florida Supreme Court made no effort to discuss – much less discredit – those decisions.[4]

     3.  <u>*Roach* Did Not Render *Shapiro* "Clearly Wrong."</u>

The Court concludes that it is bound by the Eleventh Circuit's decisions in *Shapiro* and later cases, which departed from the rule of *lex loci contractus* and applied Florida law to insurance policies covering Florida real property. Notably, the *Roach* court was not presented with an insurance policy covering Florida real property. Rather, *Roach* involved an automobile insurance claim, and relied on *Sturiano*, which expressly limited its decision to automobile insurance disputes. Further, the real issue in *Roach* was simply whether individuals who were not permanent Florida residents could invoke the public policy exception to *lex loci contractus* – a wholly different exception than the one recognized in *Shapiro*. Considering the significant factual distinctions between *Roach* and *Shapiro*, this Court cannot say *Roach* rendered *Shapiro* "clearly wrong." *See Lee*, 592 F.2d at 272. The Court must, therefore, follow Eleventh Circuit precedent as announced in *Shapiro*.

Not only is the Court bound to follow the rule set forth in *Shapiro* because it is not clearly wrong, the Court is also persuaded that *Shapiro* is correct and still presents an informed opinion as to how the Florida Supreme Court would rule when faced with facts similar to those presented here.

As demonstrated by both *Sturiano* – decided before *Shapiro* – and *Roach* – decided after *Shapiro* – Florida courts' adherence to *lex loci contractus* rests solely on the need to ensure that

---

[4] After *Roach*, in *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, the Eleventh Circuit certified to the Florida Supreme Court the question of whether *lex loci contractus* governs an insurance policy that was executed in New York, but insured Florida real property. 550 F.3d 1031, 1035 (11th Cir. 2008). Before the Florida Supreme Court could answer, however, the parties stipulated to dismissal of the appeal. Thus, as the court in *U.S. Fid. & Gaur.* recognized, the issue remains "a question of state law that is unsettled." *Id.* at 1032.

insurance contracts are stable, valid, and binding. *See Sturiano*, 523 So. 2d at 1129–30 (noting that the transitory nature of automobiles warranted application of *lex loci contractus* to ensure the governing law did not change whenever the insured risk crossed state lines); *Roach*, 945 So. 2d at 1164 (following the same reasoning as *Sturiano*); *see also Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1236 (11th Cir. 1995) (concluding that the insured risk in a life insurance policy was transitory, like an automobile, and thus applying *lex loci contractus* under the Florida Supreme Court's decision in *Sturiano*).

In the context of real property, however, there is simply no concern that the insured risk's transitory nature would cause the governing law to be unpredictable. *Shapiro*, 899 F.2d at 1119 (stating the obvious that, in contrast to automobiles' transitory capabilities, "it is equally true that real property remains stationary and immobile"). Concomitantly, the validity, bindingness, and stability concerns voiced by the Florida Supreme Court in *Sturiano* and *Roach* are absent in the context of real-property insurance claims. Absent these concerns, the "inflexibility" of *lex loci contractus* is unnecessary "to ensure stability in contract arrangements," which was the paramount concern in *Roach*. This Court is therefore persuaded that, if faced with an insurance policy covering Florida real property owned by a Florida citizen, the Florida Supreme Court would depart from "the antiquated *lex loci contractus* rule," and would apply Florida law to the real-property insurance claim. *See Shapiro*, 899 F.2d at 1119.

To summarize, the Court finds that it is bound by the Eleventh Circuit's decision in *Shapiro* because neither *Roach* nor any other subsequent Florida decision renders *Shapiro* "clearly wrong." *See Lee*, 592 F.2d at 272. Moreover, even apart from *Shapiro*'s binding effect, this Court believes that if the Florida Supreme Court faced the instant case, it would apply Florida law. That is because logic, reason, and good ol' common sense clearly mandate application of Florida law where the

insurance dispute concerns a Florida citizen's Florida real property damaged in Florida. This is especially true when, as here, Georgia's relationship is negligible, at best. *See, e.g.*, *Wilson v. Fed. Ins. Co.*, 2020 WL 6122549, at *2 (N.D. Fla. Apr. 8, 2020) (finding that it "makes no sense" to apply Missouri or Alabama law to a real-property insurance dispute where the hurricane damage occurred in Florida, the insurer knew the property was in Florida, and appraisal would take place in Florida). Given *Shapiro*'s binding effect and persuasive reasoning, combined with this commonsense approach, the Court believes that Florida law governs the instant case.[5]

    4. Florida's Public Policy Exception.

    Alternatively, even if the *lex loci contractus* rule were to apply in this case – and this Court believes it would not – Florida's public policy exception to that rule would nevertheless mandate that Florida law govern the parties' dispute. In *Roach*, which was at its core a public policy exception case, the Florida Supreme Court explained that *lex loci contractus* would not apply "in certain cases for the purposes of necessary protection of our own citizens, or of enforcing some paramount rule of public policy." 945 So. 2d at 1164 (quoting *Herron v. Passailaigue*, 110 So. 539, 542 (1926)). This exception "requires *both* a Florida citizen in need of protection *and* a paramount Florida public policy."[6] 945 So. 2d at 1165 (emphases in original). *Roach* added a third requirement in the context of insurance contract claims: "the insurer must be on reasonable notice that the insured is a Florida citizen." *Id.*

---

[5] The Court reaches this conclusion regardless of whether this result is referenced as the "most significant relationships" test or as a real-property exception to the *lex loci contractus* rule.

[6] Notably, the earlier cases concerning the public policy exception used the disjunctive "or" in setting forth the exception's required elements. *See, e.g.*, *Herron*, 110 So. at 542. In *Roach*, however, the court used the conjunctive "and," stating the exception required both a Florida citizen needing protection and a paramount Florida public policy. *See* 945 So. 2d at 1165. Because *Roach* is the later decision, the Court interprets the public policy exception in the conjunctive, requiring both a Florida citizen and a paramount Florida policy.

*Roach* concluded that the plaintiffs could not invoke the public policy exception solely because they were not Florida citizens. *Id.* at 1168. In reaching this conclusion, *Roach* relied on its decision in *Gillen v. United Servs. Auto. Ass'n*. *See id.* (citing 300 So. 2d 3 (Fla. 1974)). In *Gillen*, the plaintiff obtained automobile insurance from the defendant. 300 So. 2d at 6. The policy was "made and delivered" in New Hampshire. *Id.* After obtaining the insurance, the plaintiff moved to Florida and notified the insurance company of her move. *Id.* at 5. The plaintiff was then involved in an accident in Florida and sued to recover benefits under the policy in accordance with Florida law. *Id.* The insurance company argued that the law of New Hampshire – as "the locus of the contract" – should govern the interpretation of the policy. *Id.* at 6.

*Gillen* rejected the insurance company's argument, holding that Florida law governed the parties' dispute. *Id.* In doing so, *Gillen* reasoned that while "rules of comity" – said differently, *lex loci contractus*[7] – provide for interstate harmony, "this is not an appropriate case for the application of comity principles." *Id.* at 6, 7. In support of this departure from comity, *Gillen* cited several dispositive facts:

> (1) the plaintiff was in the process of establishing permanent residency in Florida;
> (2) the plaintiff gave the insurance company notice of her relocation to Florida;
> (3) the policy's covered vehicles were garaged in Florida; and
> (4) because the risk of the policy was centered in Florida, "only minimal contact with New Hampshire existed in terms of actual risk."

*See id.* at 6–7.

Here, the facts not only closely resemble those that led the *Gillen* court to apply the public policy exception, but are far more compelling. Commodore Plaza is a Florida corporation and therefore a Florida citizen. *Cf. id.* at 6 (noting the steps the plaintiff was taking to establish Florida citizenship). Evanston had obvious notice that Commodore Plaza was a Florida citizen. *Cf. id.* at

---

[7] *See Roach*, 945 So. 2d at 1162 (calling *lex loci contractus* "Florida's *lex loci contractus* rule of comity").

7 (noting that the plaintiff gave appropriate notice to the insurance company of her permanent relocation to Florida). Commodore Plaza's insured real property is located in Florida. *Cf. id.* at 6 (noting that the covered vehicles were garaged in Florida at the time of the plaintiff's accident). Because Commodore Plaza's real property is immobile, the insured risk was always centered in Florida, with no potential risk in Georgia. *Cf. id.* at 7 (noting the limited contact that New Hampshire had with the insured risk). And finally, the hurricane that caused the real-property damage in this case occurred in Florida. *Cf. id.* at 5 (noting that the accident causing the plaintiff's injury occurred in Florida). Thus, as in *Gillen*, the instant case "is not an appropriate case for the application of comity principles." *See id.* at 7.

As discussed above, in recognizing the validity of the public policy exception, *Roach* set forth three requirements which are undisputedly met here. Commodore Plaza is a Florida corporation and thus, is a Florida citizen, as required by *Roach*. *See* 945 So. 2d at 1169. Relatedly, Evanston not only had sufficient notice that Commodore Plaza was a Florida citizen, as required by *Roach*, it also had notice that Commodore Plaza's real property was located in Florida. *See id.* at 1165. Finally, as to the third requirement, the existence of a paramount Florida public policy, there are at least four such policies present here.

First, Florida demonstrates a clear preference for its law to govern matters concerning Florida real property. *See, e.g.*, *Xanadu*, 822 F.2d at 985 (citing *Kyle*, 128 So. 2d at 429). *Shapiro* recognized this preference, noting both a "traditional deference to local law in cases involving the adjudication of interests in [Florida] real property" and "Florida's application of the law of the situs of the property in disputes centered on real property." 899 F.2d at 1121. Here, because Commodore Plaza's real property is located in Florida, Florida has a strong interest in its law determining the rights and obligations related to the property.

Second, Florida has a substantial interest in enforcing its citizens' contractual rights, especially when those rights are favored by Florida law, as with appraisal. *See Quirch Foods LLC v. Broce*, 314 So. 3d 327, 343 (Fla. 3d DCA 2020) ("[T]he public has a cognizable interest in the protection and enforcement of contractual rights."); *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits."). Here, the parties contracted to include an appraisal clause in their agreement, and Commodore Plaza invoked that clause when the parties disagreed as to the amount of loss caused by Hurricane Irma. To apply Georgia law and not enforce Commodore Plaza's contractual right of appraisal would subvert Florida's public policy of enforcing the contractual rights of its citizens.

Third, Florida public policy favors alternative dispute resolution over formal litigation in court. *See Bos. Bank of Commerce v. Morejon*, 786 So. 2d 1245, 1247 (Fla. 3d DCA 2001) ("Florida law strongly favors the resolution of disputes by way of arbitration, and courts are encouraged to resolve all doubts in favor of arbitration.") (citations omitted); *see also* Fla. Stat. § 718.1255(3)(b) ("The Legislature finds that alternative dispute resolution has been making progress in reducing court dockets and trials and in offering a more efficient, cost-effective option to court litigation."). Florida courts have found that "the better policy of this state [is] to encourage insurance companies to resolve conflicts and claims quickly and efficiently . . . . Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts." *Nationwide Prop. & Cas. Ins. v. Bobinski*, 776 So. 2d 1047, 1049 (Fla. 5th DCA 2001); *see also Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014) (reversing because "the trial court erred in finding that appraisal was not mandatory under the language of the insurance policy" once the plaintiff had demanded appraisal).

16

Fourth, the Florida Legislature has adopted an extensive statutory scheme for regulating insurance transactions within the state. *See* Fla. Stat. §§ 624.01 *et seq.* As an example of this extensive regulation, the present insurance policy contained a notice that "This insurance is issued pursuant to the Florida Surplus Lines Law." This notice is required by Florida's Insurance Code. *See* Fla. Stat. § 626.924(1). Such extensive regulation of the insurance industry "indicates that Florida has a significant interest in litigation involving insurance of risks permanently located in Florida," further suggesting "that a Florida court would hesitate to defer to the law of another jurisdiction to control the substantive issues in this [real-property insurance claim] case." *Shapiro*, 899 F.2d at 1121.

Given that Evanston was well-aware that Commodore Plaza was a Florida corporation insuring its Florida real property against local risks, and the Florida paramount public policies applicable to this case, the Court believes that the Florida Supreme Court would apply the public policy exception to the *lex loci contractus* rule here.

In addition, reasonableness, fairness, and common sense also dictate this result. Several factors during the negotiation process gave Evanston notice that Florida law would likely apply to this insurance contract. First, as mentioned above, Commodore Plaza was a Florida corporation seeking to insure Florida real property. Thus, Evanston knew that any damage to the insured property would occur in Florida, and that Georgia – in contrast – had "only minimal contact . . . in terms of actual risk." *See Gillen*, 300 So. 2d at 7. Second, unlike in the context of automobile insurance, here there is no legitimate concern regarding the parties' "power to enter into valid, binding, and stable contracts" because Commodore Plaza's insured risk – real property – lacked any transitory features affecting the predictability of which law would apply. *See Sturiano*, 523 So. 2d at 1130. Third, the insurance contract, which Evanston drafted, states "This insurance is

issued pursuant to the Florida Surplus Lines Law." Although not a formal choice-of-law provision, this acknowledgement of Florida's regulation of the insurance contract further suggests that Evanston had notice that Florida law would likely apply, especially in view of the fact that Evanston issued the policy to "a Florida corporation operating in [Aventura] to cover property located in Florida." *See Seneca Specialty Ins. Co. v. 845 N., Inc.*, 2015 WL 3400415, at *2 n.4 (M.D. Fla. May 26, 2015) (applying Florida law to an insurance policy covering Florida real property because, among other reasons, the policy stated that it was "issued pursuant to the Florida Surplus Lines Law"). In view of the indisputable fact that this case squarely meets every requirement to apply the public policy exception, the Court finds that *lex loci contractus* does not apply here. In doing so, the Court agrees with the well-reasoned observation expressed in *Wilson*:

> Finally, a more general observation. Hurricane Michael came ashore in Florida and damaged the Florida real property at issue. The defendant insurer, knowing the property was in Florida, accepted a premium to insure it. Competent appraisers will be familiar with the governing Florida law, the standards that apply to construction and repair of structures in Florida, and the cost of such construction and repair. The assertion that Missouri law, or even Alabama law, should govern the appraisal makes no sense. Florida law applies.

2020 WL 6122549, at *2.

*      *      *

To summarize, the Court concludes that binding Eleventh Circuit precedent, which has not been rendered "clearly wrong," mandates application of Florida law to this case. And even absent that binding precedent, the Court concludes that based on reasonableness, fairness, and common sense, the Florida Supreme Court would not apply *lex loci contractus* because of the factors discussed above, including that the insured risk lacks the mobility and transitory concerns underpinning the justification for *lex loci contractus*. Finally, even if *lex loci contractus* were to apply, the public policy exception requires departure in favor of applying Florida law.

18

B. <u>Appraisal under Florida Law.</u>

Having concluded that Florida law governs the interpretation of the parties' insurance policy, the Court must now determine whether appraisal is appropriate under Florida law. At the hearing, Evanston conceded, as it must, that if Florida law applies to this case, then appraisal would be required.

Further, the Court finds that under Florida law, appraisal is indeed mandatory in this case. The policy's appraisal provision permits either party to demand appraisal if the parties disagree on the amount of a loss. "The law in Florida is clear that . . . a dispute regarding the amount of loss found to be covered under the policy is subject to appraisal if so provided in the insurance policy." *Arvat Corp. v. Scottsdale Ins. Co.*, 2015 WL 6504587, at *2 (S.D. Fla. Oct. 28, 2015) (quoting *State Farm Fla. Ins. Co. v. Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015)); *see also Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("[W]hen the insurer admits that there *is* a covered loss, but there is a disagreement on the *amount* of loss, it is for the appraisers to arrive at the amount to be paid.") (emphases in original). Here, Evanston admits that at least some of the damage to the Property was caused by Hurricane Irma. Accordingly, Evanston has admitted coverage, and the only remaining dispute concerns the extent of the damage – said differently, the amount of the loss. Because the policy offers appraisal for precisely this kind of dispute, the Court finds that Commodore Plaza's demand for appraisal obligated Evanston to participate.

## **CONCLUSION**

For the reasons stated on record at the hearing and outlined in detail above, it is,

**ORDERED and ADJUDGED** that the Appraisal Motion [ECF No. 44] is **GRANTED** and the Conflict-of-Laws Motion [ECF No. 49] is **DENIED**. Applying Florida law, the Court **ORDERS** Evanston to participate in appraisal as provided by its insurance policy.

**FURTHER ORDERED and ADJUDGED** that Evanston's Motion to Stay Trial Deadlines [ECF No. 60] is **GRANTED**. The Order Setting Civil Jury Trial [ECF No. 27] is **VACATED**, and the Court imposes the following deadlines for the parties' appraisal process:

1. Commodore Plaza must select its appraiser by **August 8, 2022**.

2. Evanston must select its appraiser by **August 15, 2022**.

3. The two appraisers selected by the parties must select the third appraiser – or notify the Court that they are unable to agree on a third appraiser – by **August 26, 2022**.

4. If the parties' nominated appraisers cannot agree on a third appraiser, either party may request the Court appoint a third appraiser. Any motion for the Court to appoint a third appraiser must be filed by **August 30, 2022**.

5. The parties must file a status report concerning the progress of the appraisal process on **November 2, 2022**.

6. The parties must complete appraisal by **December 2, 2022**.

**FURTHER ORDERED and ADJUDGED** that except for the requirements listed above (numbers 1–6), this case is **STAYED** pending notification from the parties of completing the appraisal process.

**DONE and ORDERED** in Chambers in Miami, Florida on August 5, 2022.

Paul C. Huck
UNITED STATES DISTRICT JUDGE

Copies furnished to:
The Honorable Jacqueline Becerra
Counsel of Record

20